John A. ROGERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 58461.

Court of Criminal Appeals of Texas, Panel No. 3.

April 16, 1980.

Rehearing Denied May 21, 1980.

---

Ronald L. Goranson, court appointed on appeal, Dallas, for appellant.

Henry Wade, Dist. Atty., Stephen J. Wilensky and Richard Worthy, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for theft of property of the value of at least $10,000. Following a jury verdict of guilty, the court sentenced appellant to 15 years' confinement in the Texas Department of Corrections. Although the sufficiency of the evidence is not challenged, it is necessary to set forth in some detail the facts underlying the conviction so that appellant's first two grounds of error may be placed in perspective.

On December 15, 1974, appellant leased an office in Dallas, using the name Bud Moore. He told the leasing agent that he planned to open a tax accounting office. On December 18, Jack Gillis, a salesman for Dictaphone, went to appellant's office in response to a telephone call and sold him two Ansafones. The purchase prices of each Ansafone unit, a device which automatically answers telephone calls with a taped message, was $675. Appellant originally signed the purchase agreement as Bud Moore and out of the presence of the sales agent appended his true name, John A. Rogers. He told Mr. Gillis that John A. Rogers was his business associate and later said that Rogers was his brother-in-law. As Gillis was preparing to leave, a further discussion ensued during which appellant ordered five more machines. Appellant told Gillis that he was a CPA and needed the telephone answering machines because he was planning to open other tax accounting offices. Appellant agreed to pay for these machines within 120 days.

Later in the month, appellant ordered an additional 43 units. He discussed with Gillis and his sales manager Dennis Messinger the method of payment and stated that he had several backers whose names he could not reveal until the transaction was completed. On December 24, appellant signed the sales agreement on these additional units in the name Bud Moore and later added the name John A. Rogers. On December 31, 1974, appellant ordered 16 more units and on the same day placed a fourth order for 34 units. The total value of all of these units was in excess of $60,000.

Having discovered that appellant had been pawning some of the units, Gillis called appellant and confronted him with this information. Appellant grew angry and hung up. A few minutes later appellant called back and stated that he had had a chance to talk to his brother-in-law John Rogers; that he had ascertained that Rogers was in possession of the machines. He also stated that Rogers was in financial trouble and had asked him, "Moore," for a loan.

On January 3, the question of payment for the telephone units was again discussed. At this time appellant agreed to pay 25 percent down on the week of January 13 and the balance by April 30 on the condition that Dictaphone enter into an agreement that all of the machines were to be delivered at that time. On January 20, yet another meeting was arranged during which appellant stated that he would write a check for the 25 percent down payment and that further payments would be forthcoming on a monthly basis. He then interrupted the discussion stating he needed to show the redrafted orders to his attorney. Appellant returned, but after further discussion he again left saying that the order should be rewritten again. He agreed to meet with Gillis the following morning but he did not keep this appointment.

Later on, in March 1975, appellant requested that several telephone units be serviced at an office in Euless. He maintained that some of the machines were not working properly and stated that counsel had advised him not to make any further payment. He then, however, signed a repair slip signifying his agreement that the machines were indeed in working order. This repair slip was signed in the name of John A. Rogers.

The record reflects that none of these telephone answering units was paid for though five of them were recovered from appellant. A "sworn accounting by defendant John A. Rogers," filed in a civil suit, was introduced by the State to show that appellant had sold or otherwise disposed of 98 of the telephone answering machines. Two such purchasers testified that, in response to a newspaper advertisement, they each purchased a telephone answering machine from appellant for over $300.

■ In two grounds of error, appellant asserts that the trial court erred in permitting the introduction into evidence of testimony relating to nine extraneous offenses. Without entering into the details of these offenses, we observe that the commission of each was characterized by precisely the same escalating confidence scheme as the offense for which appellant was indicted. Appellant would at first contract for the performance of a modest range of services or the purchase of a small number of items and subsequently, without paying on the original contract, escalate his requirements until the victim, realizing that he was about to be defrauded, abandoned the project entirely. We hold that the admission of testimony relating to extraneous offenses was proper. See *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972); *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.1972).

■ Appellant next attacks the admission of testimony of a court-appointed psychiatrist that appellant was aware of what he was doing and was capable of forming an intent to do an act. Appellant had introduced testimony that he had undergone approximately 100 electroconvulsive therapy treatments before the incident for which he was indicted. The evident purpose of this testimony was to establish that appellant was incapable of legal culpability for his actions. We disagree with appellant that the psychiatrist's testimony stated a legal conclusion. The psychiatrist did not testify that appellant harbored the intent to commit the crime for which he was indicted; merely that he was "capable of forming an intent to perform an act, . . . aware of what he was doing, and was responsible for his behavior." This does not state a legal conclusion. Likewise, we see no merit in appellant's contention that the trial court erred in permitting the psychiatrist to testify that his opinion was based in part upon the representations of defense counsel. The basis of appellant's contention appears to be that the action of the court in permitting the psychiatrist to testify was a violation of the attorney/client privilege. A like contention was decided adversely to appellant in *Granviel v. State*, 552 S.W.2d 107, 115 (Tex.Cr.App.1976). These grounds of error are overruled.

■ In his fifth ground of error, appellant asserts that the trial court erred in his charge to the jury. It is his contention that the charge authorized a conviction on proof

of a mental state less than that charged in the indictment. In pertinent part, the indictment alleged that appellant " . . . did unlawfully, knowingly and intentionally exercise control over property . . . with intent to deprive said owner of said property." The complained-of charge, in pertinent part, read:

"Now, if you find from the evidence beyond a reasonable doubt that on or about the first day of May, 1975, in Dallas County, Texas, the defendant John A. Rogers, did *unlawfully take* and acquire from the possession of Dennis Messinger, the owner thereof, 90 units of model 590 Ansafone, and exercise control over said units, *without the effective consent* of said owner and *with intent to deprive the said owner* of said units, and that the said units were of a unit value of at least $200 or more, then you will find the defendant guilty as charged in the indictment." [Emphasis added]

The version of V.T.C.A., Penal Code, Sec. 31.03, in effect at the time of the offense read:

"(a) A person commits an offense, if, *with intent to* deprive the owner of property:

"(1) *he obtains the property unlawfully; or*

"(2) *he exercised control over the property, other than real property, unlawfully.*

"(b) Obtaining or exercising control over property is unlawful if:

"(1) the actor obtains or exercises control over the property *without the owner's effective consent*; . . . ." [Emphasis added]

It can readily be seen that the charge incorporated the requisite mental state of intentionally depriving the owner of property. The additional allegations in the indictment were unnecessary and the failure to include them in the charge could not have the effect of undermining its validity. See *Davis v. State*, 532 S.W.2d 626, 628 (Tex.Cr. App.1976). This ground of error is overruled.

■ In his sixth ground of error, appellant complains of the admission into evidence of the records of 15 civil cases against a John A. Rogers. These records were admitted by the court for the limited purpose of showing what information was on file in the Dallas County clerk's office, the Dallas district clerk's office and the district clerk's office of Tarrant County concerning John A. Rogers. Appellant objected that there was no evidence linking the John A. Rogers named in the civil cases to him. This objection was overruled on the basis of the prosecution's argument that the connection was established because the address in the exhibits was appellant's.

The following limiting instruction was submitted by the trial court:

"You are instructed that certain evidence was introduced before you in regard to civil judgments being rendered against a John A. Rogers. Said evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the reason the defendant used the name Bud Moore, or any other name, if he did, and you will not consider the same for any other purpose."

Appellant objected to the introduction of the evidence relating to civil suits in the following terms:

" . . . In particular, referring to page 4A, we would object upon the failure of the charge to require the jury to find, from the evidence beyond a reasonable doubt, that the John A. Rogers in the civil judgment, is the same John A. Rogers who is the defendant here in trial today."

In *Fentis v. State*, 528 S.W.2d 590, 592 (Tex.Cr.App.1975), we said:

"It is elementary that an accused's connection with an extraneous offense must be shown with some degree of certainty before evidence of that offense can come in, assuming it is relevant."

In this case the address listed in the exhibits relating to the civil suits was the same

as that testified to by the State's witnesses as appellant's address in the instant case. The requisite degree of certainty was demonstrated. *Fentis v. State*, supra. Appellant's sixth ground of error is overruled.

■ In his seventh ground of error, appellant contends that the testimony of the witness Emory Wood entitled him to a charge on exculpatory statements. Wood testified that he answered an ad in the classified section of a newspaper in late April or early May, 1975. Appellant brought an Ansafone telephone answering machine to his residence and sold it to him for $355. The witness testified that appellant told him that he, "and a group of other fellows had formed a company, and that he had bought all of these machines, and that the other fellows had backed out on him, and went back out of the business, and left him by himself with all of these machines, and he had to get rid of them at a reduced price." In view of the overwhelming evidence of appellant's guilt adduced at trial, the trial court's refusal to submit such a charge, if it was error, was harmless error. Add to this the fact that the jury was instructed on the general principles of reasonable doubt, of which the charge on exculpatory evidence is but an elaboration, and we must conclude that appellant's rights were adequately protected. This ground of error is overruled.

■ In his eighth ground of error, appellant asserts that fundamental error was committed by the trial court in instructing the jury that they had to find that he did unlawfully "take and acquire" and exercise control over the property in order to convict him where the indictment only alleged that he unlawfully exercised control over the property. If anything, the additional language in the charge would require proof of a greater degree of culpability. Appellant did not object at trial and we do not perceive the matter raised to be fundamental error. This ground of error is overruled.

■ In his ninth ground of error, appellant complains of the introduction in evidence of microfilm copies of the bank records of the Dyna-tax Accounting Service, including checks written on that account, which show that John A. Rogers was the person authorized to use the account. Appellant asserts that no testimony was admitted to show that he was the John A. Rogers associated with the Dyna-tax Accounting Service. The record reflects, however, that Jack Gillis, from whom appellant agreed to purchase the Ansafone machines, testified that appellant told him that he was opening a series of income tax offices known as Dyna-tax Accounting Corporation. The prosecution sought to introduce the exhibits so the jury "might determine where the money was spent." Appellant's objection to their introduction on that ground was sustained. Appellant requested no further relief and the matter was not again entered into. No reversible error is shown.

In his last ground of error, appellant complains that the trial court permitted the prosecution to comment on his failure to testify. The complained-of argument is as follows:

"Now, it's not fair, it's not right, and it's not legal for a person to go out and secure goods or services on credit, knowing that he can't pay, and you can see for yourself, that Mr. Rogers is bound to know that he couldn't have paid for these things, and to get people out on the limb, and just saw it off. . . .

"MR. GORANSON (Defense Counsel): We object to that last statement as a comment on his failure to testify.

"THE COURT: Said what?

"MR. WORTHY (Prosecutor): I said that the evidence before them shows that he is bound to have known he couldn't have paid. . . .

"THE COURT: Overruled.

"MR. GORANSON: Note our exception."

Later the prosecution argued:

"Then, you know that he meets up with Mr. Gillis later on that same day, and I think it's a reasonable deduction from the evidence that he says 'Well, here's someone that is not as astute as Mr. Carberry (sic)—I can take him easier,' so he concentrates himself upon Mr. Gillis."

Again appellant objected on the ground that the statement was a comment upon his failure to testify, and his objection was again overruled.

 In order to offend Art. 38.08, V.A.C.C.P., 1965, the implication that the language used had reference to an accused's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion thereto. See *Ramos v. State*, 419 S.W.2d 359 (Tex.Cr.App.1967). In the instant case, the argument, when taken in the context in which it was made, merely indicates that the prosecutor was making a reasonable deduction from the evidence as to appellant's intent. This ground of error is overruled.

The judgment is affirmed.