**Margarito BRAVO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64200.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 20, 1982.

Rehearing Denied Feb. 17, 1982.

C. David Evans, Allen Cazier, San Antonio, for appellant.

Alger H. Kendall, Jr., Dist. Atty., Karnes City, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder of a peace officer. See V.T. C.A., Penal Code, § 19.03(a)(1). After the jury affirmatively answered the three special issues submitted under Article 37.071, V.A.C.C.P., the death penalty was imposed.

The case was tried in Karnes County following a change of venue from Atascosa County.

On appeal the appellant contends the court erred in failing to charge on the lesser included offenses of voluntary manslaughter and criminally negligent homicide; that the evidence was insufficient to show that he had actual knowledge at the time of the shooting that the deceased was a peace officer; that the court erred in admitting State's Exhibit No. 2 (an indictment in a prior murder conviction) over the objection that the same was hearsay and not relevant; that the evidence was insufficient to support an affirmative finding as to Special Issue No. 2—that there was a probability that he would commit criminal acts of violence that would constitute a continuing threat to society; that the imposition of the death penalty under the circumstances of this case is arbitrary and freakish and cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

A recitation of the facts are necessary to a proper disposition of most of the grounds of error.

In the early afternoon hours of December 21, 1975, the appellant Margarito Bravo and his brother, Epifanio Bravo, stopped at the Primrose Center store in Atascosa County. They were apparently on their way from San Antonio to a family tract of land in Atascosa County. Debbie Golden, an employee at the store, testified both men appeared to be intoxicated. They purchased a six pack of beer and left the store. The appellant returned shortly and bought another six pack of beer and leaned over the counter and stared at her with a strange look on his face. She was frightened. Appellant left but returned to again lean over the counter and stare at Golden. His brother came into the store and persuaded him to leave. Golden immediately called the store's owner, Bill Hardin, and reported the incident. Hardin, who lived nearby, hurried to the store. On his way he observed a black over yellow automobile with two men heading towards his vehicle in the same

lane of traffic, which swerved into the other lane about 200 yards before meeting headon. Hardin proceeded to the store and learned the description of the automobile in which appellant and his brother had departed was the same as he had encountered. He called the deceased, Aerl Jernigan, an Atascosa County deputy sheriff, at the county jail and related the disturbance at the store. Jernigan agreed to come, but said it was not possible at the time to bring anyone else to assist. Hardin requested Jernigan to activate his siren when he arrived, and that Hardin would come to help if necessary. Hardin and Bill Edwards drove to Hardin's home. When Hardin heard a siren and later a shot or shots, he and Edwards drove to within 25 or 30 yards of a spot where a black over yellow Ford was parked and behind it a bronze Ford with decals showing it was an Atascosa County sheriff's vehicle with a blinking red spot light. They saw the deceased's body sprawled on the ground and saw the appellant, armed with a .30 cal. rifle, kicking the body. His brother was nearby. When appellant saw Hardin and Edwards, he aimed the rifle in their direction and they observed him pull the trigger. The weapon did not fire, and as appellant tried to work the lever action, the gun seemed to jam. Hardin and Edwards beat a retreat.

Steve Gonzales was at the Primrose Center store and observed the deceased turn off Highway 16 onto Stacey Road and saw the black over yellow vehicle parked on Stacey Road at an approximate distance of 200 yards from where Gonzales was. Gonzales saw the deceased approach the driver's door and then stoop down as if he was talking to the passenger. He then saw the deceased attempting to place handcuffs on the driver, the taller of the two men, identified as appellant's brother, outside the car. The other man, the shorter of the two men, got out of the passenger side with a rifle and proceeded to the rear of the vehicle. This individual was identified as the appellant. Gonzales then observed the deceased going back to his patrol vehicle. He observed the above action with his naked eye and through the scope of a deer rifle. As he turned to inform his companion that the deputy appeared to be in trouble, he heard a loud shot and the sound of a hit. When his companion at first refused to go with him, Gonzales started in the direction of the altercation. His companion picked Gonzales up in his vehicle and they proceeded to a location near the scene. There, because of the presence of the companion's wife and two children in the vehicle, the companion wanted to retreat and go for help. Gonzales jumped out of the vehicle and proceeded in the direction of the difficulty. He saw that the deceased was lying in the road and that the appellant was kicking the deputy's body. Appellant's brother was seen searching the pockets of the deputy. Gonzales fired twice at appellant and his brother before they drove off.

Witnesses arriving at the scene radioed for assistance using the transmitter in the deceased's vehicle. The driver's licenses of appellant and his brother were recovered near the body of the deceased. A 30–30 rifle shell was also found at the scene.

Later that afternoon and several miles away, appellant and his brother were found in the black over yellow Ford car at the entrance to their family's tract of land. When ordered out of the car, appellant proceeded to walk toward the law enforcement personnel with a 30–30 rifle. In both English and Spanish he was ordered to drop his weapon. Two warning shots were fired before the appellant laid his rifle down. After being given his *Miranda* [1] warnings, the appellant led the officers to the place where he had hidden the deceased's pistol under some leaves and paper near his parked vehicle.

Upon being taken to jail, the appellant was again warned of his rights under *Miranda* and Article 38.22, V.A.C.C.P., by the then district attorney, J. Taylor Brite.[2] An extrajudicial written confession was then

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Brite is now District Judge of the 81st Judicial District.

taken from the appellant in which he admitted shooting the deceased.

The cause of death was shown to be a gunshot wound to the chest of the deceased which perforated the lungs, heart, stomach and aorta, resulting in massive internal bleeding. There were cuts and bruises around the mouth where the deceased had apparently been kicked. The 30–30 cal. rifle, taken from appellant at the time of his arrest, was shown to have fired the fatal bullet.

Appellant offered the portion of the confession the State had deleted because it did not want to be bound thereby. In this portion appellant stated he was the driver of the car at the time and his brother, Epifanio, was in the passenger seat. He related that after he was told he was under arrest he got out of the car and asked the reason for the arrest. Upon receiving no answer, he walked away from the "deputy" and at this time the "deputy" shot at him five times but did not hit him. He did not know whether the "deputy" shot in the air or not. Appellant then took the 30–30 rifle from his car and walked to the "deputy's" car where the "deputy" was sitting under the wheel of the car. The "deputy" pointed his pistol at the appellant but it was not fired. Appellant stated he pointed the rifle at the "deputy" trying to hit him in the shoulder, but when he fired the "deputy's" head fell back. He then took the pistol out of the "deputy's" hand.

Appellant also offered the testimony of a court-appointed investigator for the defense that some eight months after the shooting he inspected appellant's car and that on the left rear of the car there was a crease that still contained lead as if it had been struck by a bullet. He did not know when this crease occurred.

The deceased's pistol when found had five spent bullets in it. Most of the State's witnesses heard only one shot at the time of the offense. The State offered evidence that at the time of the arrest, prior to the discovery of the pistol, appellant's car was full of beer cans and several beer cans found in the area showed fresh holes as if they had recently been perforated by a bullet from a firearm.

The court charged on the law of self-defense, but the jury by its verdict rejected the defense.

■ Appellant contends the evidence is insufficient to show that he had actual knowledge, at the time of the shooting, that the deceased was a peace officer.

V.T.C.A., Penal Code, § 19.03(a)(1) (Capital Murder), reads:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

"(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman; . . ."

In pertinent part the indictment alleged the appellant on or about December 21, 1975 "did then and there intentionally and knowingly cause the death of an individual, to wit: Aerl L. Jernigan, a peace officer (who was then and there acting in the lawful discharge of an official duty and who the actor knew was a peace officer), by shooting him with a firearm; . . ."

The record reflects that the deceased was a deputy sheriff at Atascosa County. On the day in question he was working at the county jail during visitors' hours. He was dressed in mufti and wore his badge on his shirt. When he received Hardin's call, he put on a jacket or windbreaker and left the jail armed. He drove a county vehicle displaying Atascosa County Sheriff's decals, equipped with a two-way radio, siren and flashing red light mounted on the side of the car near the driver's seat. Hardin heard a siren,[3] and left his home to assist the deceased as this was prearranged. The written extrajudicial confession was offered by the State with certain portions deleted.

---

**3.** There were other State's witnesses at the Primrose Center store who did not recall hearing any siren.

The balance of the confession was offered by the appellant. The confession in its entirety shows that appellant referred throughout the statement to the deceased as the "deputy" or "deputy sheriff." It also reflects that while appellant and his brother were parked about 200 yards from the Primrose Center store a vehicle with flashing lights pulled up in the rear of their vehicle and that an armed individual approached appellant's vehicle and told them they were "under arrest" and pulled his pistol. The confession in its entirety related that after the "deputy" went back to his car that appellant with his 30–30 rifle approached that vehicle after the "deputy" was under the wheel of his car and the car's red lights were still flashing and shot the "deputy" and put the "deputy's) pistol in his (appellant's) belt.

Appellant did not testify. He relies heavily upon the following statement in the written confession: "I am making this statement to tell the truth about my shooting deputy Sheriff Aerl Jernigan this date December 21, 1975, about 1:30 p. m. As far as I know, I did not know the deputy sheriff and as far as I know I had not seen him before."

He argues that the deceased was wearing civilian clothes, that his badge was inside of his windbreaker, that the deceased's vehicle had approached from the rear, and thus such vehicle was not readily identifiable as a law enforcement vehicle. Appellant contends that the district attorney had informed him prior to giving the confession that he had shot a deputy sheriff and that the references in the confession resulted from such information and not because he knew that the deceased was a peace officer.

The court in its charge required the jury to find that the appellant knew that the deceased was a peace officer at the time of the shooting before the jury could find the appellant guilty of capital murder. Viewing the evidence in the light most favorable to the jury's verdict, we conclude the evidence was sufficient to show that the appellant knew the deceased was a peace officer at the time of the shooting.

In two grounds of error the appellant contends the court erred in failing to charge on the lesser included offenses of voluntary manslaughter (V.T.C.A., Penal Code, § 19.-04)[4] and criminally negligent homicide (V.T.C.A., Penal Code, § 19.07).[5] Timely presented special requested charges were overruled. See Article 36.15, V.A.C.C.P.

■ At the outset it is observed that the appellant did not testify and it was undisputed that the appellant shot the deceased with a 30–30 cal. rifle. Such a rifle is a deadly weapon per se, and when used by a defendant, an intent to kill is presumed. *Jackson v. State*, 548 S.W.2d 685 (Tex.Cr. App.1977), and cases there cited; *Valore v. State*, 545 S.W.2d 477 (Tex.Cr.App.1977).

---

4. Said § 19.04 reads:

"(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

"(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

"(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

"(d) An offense under this section is a felony of the second degree."

5. Said § 19.07 provides:

"(a) A person commits an offense if he causes the death of an individual by criminal negligence.

"(b) An offense under this section is a Class A misdemeanor."
V.T.C.A., Penal Code, § 6.03(d), also provides:

"(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

■ Where the evidence fairly raises the issue of voluntary manslaughter and a charge thereon is properly requested the court is bound to submit such issue. *Roberts v. State*, 590 S.W.2d 498 (Tex.Cr.App. 1979); *Medlock v. State*, 591 S.W.2d 485 (Tex.Cr.App.1979).

In *Thomas v. State*, 578 S.W.2d 691, 698 (Tex.Cr.App.1979), this court wrote:

"A charge on a lesser included offense is not required unless the evidence raises that issue. *McBrayer v. State*, 504 S.W.2d 445 (Tex.Cr.App.1974); *Torres v. State*, 493 S.W.2d 874 (Tex.Cr.App.1973). And, if the evidence raises only the issue that the accused is guilty of the offense charged or no offense at all, the issue of a lesser included offense is not raised. *McBray v. State,* supra, and cases there cited."

In *Daywood v. State*, 157 Tex.Cr.R. 266, 248 S.W.2d 479 (1952), this court wrote:

"... At this juncture, it will be noted that, merely because a lesser offense is included within the proof of a greater offense, a charge on the lesser is not required unless there is testimony raising the issue that the appellant, if guilty at all, is guilty only of a lesser offense included in the greater offense charged." See also *McBrayer v. State*, 504 S.W.2d 445 (Tex.Cr.App.1974); *Day v. State*, 532 S.W.2d 302, 307 (Tex.Cr.App.1976).

In *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Cr.App.1981) (Opinion on Rehearing), it was stated:

"Thus, in determining whether a charge on a lesser included offense is required, a two step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Eldred v. State*, 578 S.W.2d 721 (Tex.Cr.App.). This Court has consistently employed the two step analysis in recent opinions dealing with the necessity of a charge on a lesser included offense. See *Watson v. State,* supra (605 S.W.2d 877—

Tex.Cr.App.1980); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.); *Wilder v. State*, 583 S.W.2d 349 (Tex.Cr.App.); *Wright v. State*, 582 S.W.2d 845 (Tex.Cr. App.); *Briceno v. State*, 580 S.W.2d 842 (Tex.Cr.App.); *Thomas v. State*, 578 S.W.2d 691 (Tex.Cr.App.); *Williams v. State*, 575 S.W.2d 30 (Tex.Cr.App.)."

In *McCartney v. State*, 542 S.W.2d 156, 160 (Tex.Cr.App.1976), it was written:

"As the Practice Commentary notes, said § 19.04 is a blend of the old and the new, and cases decided under former Article 1257c, as enacted in 1927, and those decided earlier under the former manslaughter statute are instructive in deciding the case before us.

"An instruction on manslaughter is properly refused where there is no evidence whatever of adequate cause. *Hill v. State*, 11 Tex.App. 456 (1882). And it was well established under former Article 1257c that it was not error to fail to instruct on the issue of murder without malice unless there was some testimony raising the issue. *Garza v. State*, 479 S.W.2d 294 (Tex.Cr.App.1972); *David v. State*, 453 S.W.2d 172 (Tex.Cr.App.1970); *Lucky v. State*, 495 S.W.2d 919 (Tex.Cr. App.1973), and cases there cited; *Simmons v. State*, 504 S.W.2d 465 (Tex.Cr. App.1974); 29 Tex.Jur.2d, Homicide, Sec. 279, p. 514." See also *Payne v. State*, 516 S.W.2d 675, 677 (Tex.Cr.App.1974).

■ In viewing the evidence in the instant case, we cannot conclude that evidence showed that the appellant killed the deceased under a sudden passion arising from an adequate cause. Since the issue was not raised, the trial court did not err in refusing the requested charge on voluntary manslaughter. See and cf. *Clay v. State*, 505 S.W.2d 882 (Tex.Cr.App.1974); *Ex parte Green*, 548 S.W.2d 914 (Tex.Cr.App. 1977); *Cerda v. State*, 557 S.W.2d 954 (Tex. Cr.App.1977). See also *McCartney v. State*, supra.

■■ Where the issue of criminally negligent homicide is raised, a charge thereon should be given if properly requested. *Es-*

parza v. State, 520 S.W.2d 891 (Tex.Cr.App. 1975). We conclude, however, under the evidence in the instant case that the issue of such lesser included offense was not raised. There was no evidence to indicate that the appellant possessed the requisite culpable mental state for negligent homicide, i.e., that he ought to have been aware of a substantial and unjustifiable risk and was not aware. Simpkins v. State, 590 S.W.2d 129 (Tex.Cr.App.1979). Here appellant's confession showed that he intentionally shot at the deceased with a .30 cal. rifle.

Appellant's grounds of error relating to requested charges on lesser included offenses are overruled.

■ Appellant also contends the court committed reversible error in admitting into evidence, at the penalty stage of the trial, State's Exhibit No. 24, an indictment from a prior murder conviction in that such indictment violated the hearsay rule and was not relevant.

State's Exhibit No. 23, a pen packet concerning a prior murder conviction in Cause No. 64,152 in the 144th District Court of Bexar County including the judgment and sentence, was introduced into evidence. Thereafter, the State offered a certified copy of the indictment in said Cause No. 64,152. The objection was: "Your Honor, we would object on the grounds that it is not the best evidence available. They should have put the clerk on and have him identify it, and we don't see the relevancy of it, either, Your Honor."

It can be seen that the objection was not exactly the same as the ground of error. The certified copy of the indictment was admissible under Article 3731a, V.A.C.S.,[6] and the trial court had the discretion under Article 37.071, V.A.C.C.P., to admit all relevant evidence. The indictment was properly admitted under the circumstances. Appellant's argument now presented on appeal is that the pen packet did not disclose the name of the deceased or the manner of the

killing, by shotgun, but that the indictment did. This was not the objection offered in the trial and presents nothing for review on that score. Even if this objection had been made, it would have been properly overruled.

Appellant further urges the evidence was insufficient to support the jury's affirmative finding to the second special issue that there is a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. See Article 37.071, V.A.C.C.P.

. ■■ In answering special issues under Article 37.071, V.A.C.C.P., the jury, at the penalty stage of the trial, may consider all of the evidence adduced at the guilt stage of the trial. Duffy v. State, 567 S.W.2d 197 (Tex.Cr.App.1978); Felder v. State, 564 S.W.2d 776 (Tex.Cr.App.1978); Brock v. State, 556 S.W.2d 309 (Tex.Cr.App.1977); Moore v. State, 542 S.W.2d 664· (Tex.Cr. App.1976). See and cf. Wallace v. State, 618 S.W.2d 67 (Tex.Cr.App.1981) (Concurring Opinion). Indeed the circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the second special issue submitted at the penalty stage of a capital murder case. Duffy v. State, supra, and cases there cited.

Here in addition to the facts of the instant case, there was a showing that the appellant had been convicted in 1964 of murder and his punishment was assessed at 25 years' imprisonment. There was other evidence that in 1974 he was arrested for resisting arrest for public intoxication following a disturbance and while resisting arrest badly bit an officer. Later in 1974 he was arrested for public intoxication and subsequently threatened to kill the arresting peace officer. Three veteran police officers from San Antonio, where appellant lived, testified that appellant's reputation for being a peaceful and law-abiding citizen was bad. Appellant complains chiefly of

6. There was no claim of surprise here made by the appellant. The prior conviction was alleged in the second paragraph of this capital murder case, but prior to the penalty stage of the trial the State waived and abandoned the allegations in the second paragraph.

the absence of psychiatric testimony by the State. While such testimony is admissible and may have probative value, *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr. App.1976); *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr.App.1977), it is not essential to support an affirmative finding to the second special issue submitted to the jury. See *Freeman v. State*, 556 S.W.2d 287 (Tex. Cr.App.1977); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977). The appellant, represented by retained counsel, was free to offer mitigating circumstances as well as psychiatric testimony. He did not do so. Appellant's motion for a psychiatric examination was granted and an "Order For Complete Mental Examination" "at cost of Atascosa County" by Dr. Richard Cameron of San Antonio was granted. The record before this court does not reflect whether such an examination was conducted, whether a report to the court was ever made, etc. Dr. Cameron was not called by either party. Viewed in the light most favorable to the jury's verdict, we conclude the evidence was sufficient to support the jury's affirmative answer to Special Issue No. 2. Appellant's ground of error is overruled.

Lastly the appellant complains that the imposition of the death penalty under the "peculiar" circumstances of the instant case is arbitrary and freakish and thus is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Appellant candidly admits that the constitutionality of the present Texas capital murder procedure was upheld in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), after its earlier decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Nevertheless, he urges his claim. We reject such contention.

The judgment is affirmed.

ROBERTS, J., concurs in the result.