Jesse **BORNS**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–83–00339–CR.

Court of Appeals of Texas, Dallas.

July 3, 1984.

Rehearing Denied July 30, 1984.

Percy Foreman, Foreman, DeGeurin & DeGeurin, Houston, Bruce Anton, Jackson, Sorrels, Shapiro & Anton, Dallas, for appellant.

Henry Wade, Dist. Atty., Molly Meredith, Asst. Dist. Atty., for appellee.

Before STEPHENS, STEWART and WHITHAM, JJ.

STEWART, Justice.

Jesse Borns, Jr., appeals his conviction for the offense of murder and sentence of forty years' confinement. In his first

ground of error, he challenges the court's refusal to submit a requested jury charge on criminally negligent homicide, and in grounds two and three he complains of the prosecutor's arguments to the jury. We affirm the conviction.

Appellant borrowed money from the deceased and did not repay it. Their previously close relationship deteriorated, and the deceased continued to insist upon repayment. When appellant saw the deceased standing near his car in the parking lot of the church where he was a minister, he got his pistol and went to the parking lot to confront her. First, he shot the tire of her car, apparently to frighten her, and then he pointed the gun at the deceased. As the deceased reached out toward the gun, it fired, and she was killed.

Appellant pleaded not guilty. He did not testify at his trial before a jury, but in his written confession he described the incident as follows:

> I had the gun pointed at her, and Joyce reached out toward the gun, and I inadvertently jerked and a shot went off. Joyce fell down and then I realized she was shot.

The jury charge included a charge on murder, the lesser included offense of involuntary manslaughter, and an instruction to acquit the defendant if the jury found that the shooting was the result of an accidental discharge of the gun. Appellant's request for a charge on criminally negligent homicide was denied.

Appellant contends that his voluntary statement raised the issue of criminally negligent homicide in that it raised the issue that the shooting was an accident. He further maintains that, because accidental discharge of a gun can be either involuntary manslaughter or criminally negligent homicide, both charges should have been submitted to the jury. He cites as authority *Schoelman v. State*, 644 S.W.2d 727 (Tex.Crim.App.1983), and *Hunter v. State*, 647 S.W.2d 657 (Tex.Crim.App.1983) (*en banc*). We disagree with his contention and distinguish these cases from the facts of the case at bar.

Appellant correctly asserts that criminally negligent homicide is a lesser included offense of murder and that criminal negligence occurs when the actor fails to perceive a risk so obvious that his failure of perception constitutes a gross deviation from the acceptable standard of conduct. *See* TEX.PENAL CODE § 19.05(a), § 19.07(a), § 6.03(d) (Vernon 1974); *Salinas v. State*, 644 S.W.2d 744 (Tex.Crim.App.1983). However, in order to require a charge on a lesser included offense, we must determine that there is some evidence in the record raising the issue *and* the evidence must indicate that, if the defendant is guilty, he is guilty only of the lesser offense. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981) (Opinion on Court's Motion for Rehearing); *Eldred v. State*, 578 S.W.2d 721, 722–23 (Tex.Crim.App.1979); *see also, Bravo v. State*, 627 S.W.2d 152, 157 (Tex.Crim.App.1982) (*en banc*); *Thomas v. State*, 578 S.W.2d 691, 698 (Tex.Crim.App.1979).

First, we note that appellant's contention that the shooting was accidental is an assertion of innocence. *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App. 1982) (*en banc*). Under the former penal code, when there was a defense of accident, the Court of Criminal Appeals held that "the defense of accident does not in and of itself raise the issue of negligent homicide." *Simpkins v. State*, 590 S.W.2d 129, 133 (Tex.Crim.App.1979). Here, appellant claimed that he "inadvertently jerked." This is an assertion that he did not voluntarily engage in the conduct of which he is accused. Thus, the assertion that the act was involuntary does not raise the issue of criminal negligence, which is based on a voluntary act. *See Dockery v. State*, 542 S.W.2d 644 (Tex.Crim.App.1975).

Next, we consider whether any evidence in this case raises the issue of criminally negligent homicide. In *Schoelman*, relying on *Giles v. State*, 617 S.W.2d 690 (Tex. Crim.App.1981), the court held that the act of "pointing a gun at a person raises the issue of criminally negligent homicide, i.e., as to whether the accused was unaware of

the risk that he ought to have been aware of...." *Id.* at 691. The Court of Criminal Appeals in *Lugo v. State,* 667 S.W.2d 144, 148 (Tex.Crim.App.1984) (*en banc*), quoted from the *Schoelman* opinion and said that there the court held that:

> criminal negligence arises when one points a loaded gun at another, and since the distinction between involuntary manslaughter and criminal negligence depends solely on which of the two inferences regarding the accused's awareness of the risk is correct, both issues, "recklessness" and "criminal negligence," should have been submitted to the jury for resolution.

At first glance it appears that the court in *Schoelman* required a charge on criminally negligent homicide because the defendant was pointing a gun at the deceased. However, this interpretation of *Schoelman* conflicts with prior opinions of the Court of Criminal Appeals where, although the accused pointed a gun at deceased, it was held that the issue was not raised. *Simpkins,* 590 S.W.2d 129; *Lewis v. State,* 529 S.W.2d 550 (Tex.Crim.App.1975). In *Schoelman,* the defendant testified that, "while she intended to point a gun at another person, 'she was not aware of the risk which her conduct created,' and that 'the gun accidentally discharged when she was grabbed.'" On the other hand, there was additional testimony indicating 'that she perceived the risk of her conduct.'" *Id.* 644 S.W.2d at 734. The court, there, held that "[w]hich of the two inferences regarding the accused's awareness of the risk is correct is a matter to be drawn from the circumstances by the jury." *Schoelman,* 644 S.W.2d at 734; *Giles,* 617 S.W.2d at 691; *see also Branham v. State,* 583 S.W.2d 782 (Tex.Crim.App.1979). In *Schoelman,* the defendant's own testimony, though conflicting, raised both the issues of criminally negligent homicide *and* involuntary manslaughter.

The proper interpretation of *Schoelman,* as it is discussed in *Lugo,* is that, once the evidence raises the issue of criminally negligent homicide, it cannot thereafter be negated by other evidence. In *Lugo,* the Court of Criminal Appeals, reiterating its holding in *Moore v. State,* 574 S.W.2d 122 (Tex.Crim.App.1978), stated:

> The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence *from any source* raises a defensive issue or raises an issue that a lesser included offense may have been committed ... the issue must be submitted to the jury. It is then the jury's duty under the proper instructions to determine whether the evidence is credible and supports the defense or the lesser included offense. (emphasis added).

*Lugo,* 667 S.W.2d at 147, quoting *Moore,* 574 S.W.2d at 124; *see also Schoelman,* 644 S.W.2d at 732–33.

■ We agree with *Lugo* and *Schoelman* that all evidence, from any source, must be considered and that, once an issue has been raised by the evidence, it cannot be negated by other evidence, whether strong, weak, unimpeached, or contradicted. *See Lugo,* 667 S.W.2d at 147. We do not interpret either *Lugo* or *Schoelman* to hold that the act of pointing a gun necessarily raises the issue of, and requires a charge on, the lesser included offense of criminally negligent homicide.

Cited in *Schoelman,* the statement in *Giles,* 617 S.W.2d at 691, that "pointing a loaded gun at a person constitutes criminal negligence," was based upon *London v. State,* 547 S.W.2d 27 (Tex.Crim.App.1977), and *Dockery,* 542 S.W.2d 644. In *Dockery,* the defendant was only charged with negligent homicide, not with the greater offense of murder or involuntary manslaughter. There, the court distinguished accidental homicide, which results in acquittal, from negligent homicide, for which punishment is provided by law. The court concluded that the conduct of the defendant, having the gun in his hand when he was asleep on the floor and discharging it as he arose, was a voluntary act, and therefore, the defendant ought to have been aware of the risk he created by his conduct. Thus, the

evidence supported the conviction of the offense of criminally negligent homicide.

The Court of Criminal Appeals found similarities to *Dockery* in *London* in that the defendant's act of pointing a loaded shotgun at a person was sufficiently voluntary to constitute criminal negligence. In *London,* the sixteen year old defendant was charged with murder but requested a charge on criminally negligent homicide. No charge on involuntary manslaughter was requested. Because the jury had only the alternative of finding him guilty or setting him free, the appellate court reversed and held that under the particular facts presented, a jury could have found that the defendant was criminally negligent.

The issue of criminally negligent homicide raised in *London* and *Dockery* was not considered as a lesser included offense of involuntary manslaughter. Further, in *Giles,* the issue of criminally negligent homicide was not considered at all. There, a fifteen-year-old defendant borrowed a derringer from his brother and testified that the gun went off while he was pointing it at the deceased. The trial court charged only on murder and the defendant requested a charge on the lesser included offense of involuntary manslaughter. The appellate court reversed, stating that the requested charge on involuntary manslaughter should have been given under these facts. Our reading of *Giles* does not support the proposition that the act of pointing a gun at a person will always mandate a charge on criminal negligence. From our analyses of the holdings in relation to the facts of *London, Dockery, Giles,* and *Schoelman,* we conclude that, before a charge on criminal negligence is required, there must be some evidence that raises the issue of whether the accused was unaware, but ought to have been aware, of the risk he created by pointing the dangerous weapon.

In *Lewis,* 529 S.W.2d 550, the defendant was convicted of involuntary manslaughter and the requested charge on criminally negligent homicide was denied. The gun discharged and a fatal bullet struck the deceased in the eye when the defendant "shook" his gun at the deceased. The fact that the defendant pointed his gun at the deceased did not raise the issue of criminally negligent homicide. *Id.* at 552.

The facts of *Simpkins* are similar to the facts before us. There, the defendant was convicted of murder and requested a charge on criminally negligent homicide, involuntary manslaughter, and aggravated assault. The evidence showed that the defendant *knew* of the risk he created: he qualified on the rifle range in the Army and knew that weapons were dangerous. There was no evidence that the defendant was not aware of a substantial and unjustifiable risk of which he ought to have been aware. The defendant claimed that the shooting was the result of an accidental discharge. The court held that the issue of criminally negligent homicide was not raised.

We are aware that the Court of Criminal Appeals, in *Lugo,* expressly disapproved of an implication in *Simpkins* that a defendant's testimony can negate evidence that would otherwise be sufficient to raise the issue of a lesser included offense. However, this implication comes from a discussion in *Simpkins* of the evidence regarding the lesser included offense of aggravated assault where the court said, "[T]he evidence does not raise the issue of this offense, in that the appellant has denied committing any voluntary or intentional act which would raise any of the elements of this offense." *Simpkins,* 590 S.W.2d at 134. *Lugo* stressed the necessity of considering *all* the evidence in order to determine whether an instruction on a lesser included offense should be given; it did not disapprove of the holding in *Simpkins* that the issue of criminally negligent homicide was not raised.

Here, there is no evidence in the record from any source that appellant was unaware of the risk created by pointing a loaded gun at the deceased. He had owned a gun for several years for the protection of the church; he had just shot the tire on the victim's car, and he obviously knew

that the gun was loaded and that it could inflict fatal wounds. Under this record, no issue was raised of whether appellant was unaware of a risk of which he should have been aware; therefore, the court correctly denied appellant's requested charge on criminally negligent homicide.

Appellant next complains of the prosecutor's arguments to the jury. In his closing argument at the guilt-innocence phase of the trial the prosecutor stated:

His voluntary statement shows you that the relationship was still going on in 1982. Well, Mr. West, what leads you to that conclusion? In January of this year, this year is 1982, Joyce Chester borrowed $5,000 from Wynnewood Bank. He says that Joyce gave him $2,000 of it. So we know that the relationship was still going on.

You also had the keys to the house. We know that. *And that has not been rebutted.* You also spent the night over there. *And that has not been rebutted.* So you can take all of this into consideration in determining what his intent was.

Now, as far as his intent, again, or his knowledge, let's take into consideration the prior threats that he has made. Mr. Nacol (the defense attorney) hasn't mentioned that. He's only tried to knock that down but he couldn't rebut the fact that on July 11th, July 11th that Jesse Borns threatened Joyce's life to her Aunt. *He couldn't rebut that fact* and that goes to his intent and to his knowledge.

Appellant contends that evidence regarding the intent and knowledge of the accused is available from only one source, the accused himself, and that, therefore, the State improperly commented on his failure to testify. Further, he argues that no one could rebut the fact of appellant's threat except appellant himself.

The State argues that his objection was not timely because no objection was made to the first portion of the argument. It further argues that the complained of statement was merely a summation of the evidence presented by appellant's witnesses. It concedes that, in order to constitute

reversible error, the language used must necessarily refer to the accused's failure to testify and that it is not sufficient that the language might be construed as an implied or indirect allusion thereto. *Rogers v. State,* 598 S.W.2d 258, 264 (Tex.Crim.App. 1980).

■ First, we hold that appellant did not waive his right to complain of the latter portion of prosecutorial argument by failing to object to the earlier portion. The first portion of the argument, which stated that appellant had not rebutted evidence regarding his possession of keys to the deceased's house and the allegation that he had spent the night there, did not necessarily refer to appellant's failure to testify. Consequently, an objection at that time would have been properly overruled.

■ Next, we hold that the complained of portion does not constitute reversible error. In order to constitute reversible error, the language must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on his failure to testify. *Angel v. State,* 627 S.W.2d 424, 426 (Tex. Crim.App.1982). The challenged comment must be viewed from the standpoint of the jury. If the remark *calls the jury's attention* to the absence of evidence that only the testimony from appellant could supply, the conviction must be reversed. *Id.; see also Johnson v. State,* 611 S.W.2d 649 (Tex.Crim.App.1981); *Myers v. State,* 573 S.W.2d 19 (Tex.Crim.App.1978).

■ Viewing the challenged argument in context before the jury, it does not appear to be manifestly intended to call the jury's attention to appellant's failure to testify. Intent and knowledge of a defendant is often shown by evidence other than testimony of the defendant. Although the remark alludes to his silence, it does not focus attention on it, rather it focuses on the testimony of the witnesses. Despite the fact that no one else may have been close enough to hear the threat, rebuttal of the testimony in question could have come from impeachment of the witness. Here,

the prosecutor's comments may just as well have been heard to mean that defendant could not impeach the witness. Further, when the objection was overruled, the prosecutor went on to say, "Just like the State has a right to subpoena people, so does the Defense. They can subpoena anyone and anything they want." Viewing the total flow of the argument in context, the complained of argument does not appear to focus the jury's attention impermissibly on the failure of appellant to testify.

■ Appellant finally complains of the prosecutor's argument at the punishment phase of the trial in which he stated:

And what did he say both those times? It was an accident. It was Joyce's fault. He has never told Mr. Coughlin or Mrs. Crittendon the first thing you expect from anybody, much less a minister: I'm sorry I killed her and I'm sorry she's no longer here living with the rest of us.

Appellant claims that neither witness had been called at the punishment phase of the trial. He contends that if the accused does not testify, and a demand for evidence of contrition is made during the prosecutor's argument, reversible error results because the argument constitutes an improper comment on appellant's failure to testify. Appellant cites as authority *Davis v. State*, 646 S.W.2d 594 (Tex.App.—Dallas 1983, pet. granted), and *Thomas v. State*, 638 S.W.2d 481 (Tex.Crim.App.1982) (*en banc*).

In *Davis*, the prosecutor argued:

You know, you may find it hard to believe that by age 17 you can be as mean, as vicious, as self-centered and as totally devoid of felings [sic] for other human being lives as he is, but that's the way he is. You think he can be can be rehabilitated? Look at that witness stand. Was there one shred of evidence before you to tell you he's going to change, he can be changed, he wants to be changed, he will changed?

This argument was designed to show the jury that Davis had displayed no contrition for his wrongdoing nor any desire to change his attitude, or his way of life, which would justify the jury in being lenient in assessing punishment. The re-

marks directed the jury's attention to the absence of evidence that only appellant's testimony could supply; consequently, the convictions were reversed. *Davis* at 594–595.

A similar argument in *Thomas* was affirmed. There the prosecutor argued:

I'll tell you something else you didn't hear. You didn't hear one single solitary bit of contrition on the part of this defendant from his witnesses nor his attorney. He had his wife and sister up there. They didn't tell you, 'Boy, he's sorry about this. He's sorry and he wants to do right. He just wishes he hadn't have done it.' He just wishes he hadn't have done it.' You didn't hear that. You didn't hear one single bit of that and I guarantee you if he was sorry for what he had done—and I submit he is not in the least bit sorry—you would've heard about it from his witnesses.

The Court of Criminal Appeals held that this argument would not necessarily be understood as a reference to the defendant's failure to testify because the defendant called his wife and his sister to testify at the punishment stage of the trial and the prosecution had referred expressly to "his witnesses." *Thomas*, at 485; *Davis* at 594–595. Because the appellant in *Thomas* only challenged the argument as a comment on his failure to testify, and the argument referred to the testimony of others, the court overruled this ground of error.

The facts of the instant case are similar to those of *Thomas*. Contrary to appellant's claim, the record includes testimony of Crittendon at the punishment phase and of both Coughlin and Crittendon during the guilt-innocence phase of the trial. The argument refers to what appellant told two witnesses immediately after the offense. Therefore, it does not necessarily direct the minds of the jury to the fact that appellant did not testify in his own behalf.

Judgment is affirmed.

WHITMAN, Justice, dissenting.

I respectfully dissent. *Lugo v. State*, 667 S.W.2d 144 (Tex.Crim.App.1984) (*en*

*banc*) and *Schoelman v. State*, 644 S.W.2d 727 (Tex.Crim.App.1983), support appellant's first ground of error complaining of the trial court's refusal to charge on criminally negligent homicide. Compare the accused's testimony in *Schoelman* with appellant's written confession in the present case. The *Schoelman* testimony:

Q: You really took this gun and went to that door to frighten Coe, is that correct?

A: That is correct.

Q: And by frightening him, retrieve your ring, is that correct?

A: I thought he would just give it to me. I had no intention of hurting anyone.

Q: Your intent was to point the gun at him and say, "I want my ring," is that correct?

A: Yes.

Q: And you did that, did you not?

A: Yes.

    \*    \*    \*    \*    \*    \*

Q: I know you didn't have to have any intent to fire it, you had the gun in your hand and you say it accidentally went off, then you didn't pull the trigger, Mrs. Tillery hit the gun, isn't that what you said?

A: She grabbed.

Q: And that caused the gun to go off?

A: That's correct.

Q: All right. But if you had intended to shoot Buford or anyone, all you had to do was pull the trigger?

A: Sir, I presumed that to be true. I never pulled the trigger on that gun, intentionally, in my life.

644 S.W.2d at 731–32.

Appellant's written confession:

I had the gun pointed at her, and Joyce reached out toward the gun, and I inadvertently jerked and a shot went off. Joyce fell down and then I realized she was shot.

In both *Schoelman* and the present case, the accused pointed a gun at another person. In *Schoelman*, the evidence showed that the victim "grabbed" at the gun and "that caused the gun to go off." In the present case, the evidence established that the victim "reached out toward the gun" and "a shot went off." Thus, the critical facts are essentially the same in both *Schoelman* and the present case. Indeed, the facts in the present case are stronger than in *Schoelman*. The key to criminal negligence is found in the failure of the actor to perceive the risk. *Lugo*, 667 S.W.2d at 148. The evidence in the present case established that appellant acted "inadvertently." "Inadvertent" means "inattentive." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1140 (3d ed. 1976). If appellant was "inattentive," he failed to detect, spot, or recognize the risk. Therefore, the record establishes that appellant failed to perceive the risk. *Schoelman* held that the issue of criminal negligence should have been submitted to the jury. 644 S.W.2d at 734. Likewise, a charge on criminally negligent homicide was required in the present case.

The majority goes to great lengths to tell the Court of Criminal Appeals that the court did not mean what it said in *Lugo* about the act of pointing a gun at a person raising the issue of, and requiring a charge on, the lesser included offense of criminally negligent homicide. The majority fails in its efforts to distinguish *Lugo*. Indeed, *Lugo* relies on *Schoelman* and quotes the above testimony of the accused in the latter case. Accordingly, I would hold that the trial court erred in refusing to charge on criminally negligent homicide. Consequently, I would sustain appellant's first ground of error and reverse and remand.

Furthermore, I would sustain appellant's third ground of error for the reasons stated in my dissent in *Thomas v. State*, 629 S.W.2d 112, 116 (Tex.App.—Dallas 1981), *aff'd*, 638 S.W.2d 481 (Tex.Crim.App.1982) (*en banc*). Therefore, I would also reverse and remand for that additional reason.