**Ex parte Delmas Scott CAMPBELL.**

**No. 69620.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Delmas Scott Campbell, pro se.

Henry Wade, Dist. Atty. and Ruth E. Plagenhoef, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a post-conviction habeas corpus proceeding brought under the provisions of Article 11.07, V.A.C.C.P.

Applicant was convicted of murder in Cause No. F79–11080–R in the 265th District Court on June 26, 1980. The jury which convicted him also assessed his punishment at life imprisonment.

Applicant, in the habeas application, contends the trial court improperly added an affirmative finding to the judgment reading:

"The Court finds that defendant herein used or exhibited a deadly weapon, during the commission of said offense."

Applicant argues that the court was unauthorized to make such finding as the indictment failed to allege a deadly weapon was used in the commission of the offense, the charge did not submit a special issue to the jury concerning the use of a deadly weapon, the verdict form utilized made no reference to a deadly weapon and the court was not the trier of facts. Applicant complains that such finding affects his eligibility for parole. See Article 42.12, § 15(b), V.A.C.C.P., in effect at the time of the 1979 offense and applicant's 1980 conviction, and see *Ex parte Alegria*, 464 S.W.2d 868, 874 (Tex.Cr.App.1971).

The convicting court, where the habeas application was originally filed under Article 11.07, supra, entered a nunc pro tunc judgment substituting the word "jury" for the word "court" in the affirmative finding of the use of a deadly weapon. Thereafter the convicting court recommended that relief be denied and ordered the habeas corpus record forwarded to this Court.

The indictment in part alleged that on or about October 9, 1979 appellant

"did then and there unlawfully, intentionally and knowingly cause the death of Marilyn Archer Campbell, an individual *by shooting* the said Marilyn Archer Campbell, *with a handgun....*" (Emphasis supplied.)

The charge tracked the indictment in applying the law to the facts. The jury returned a verdict at the guilt stage of the trial reading:

"We, the jury, find the defendant guilty of murder, *as charged in the indictment.*

"/s/ Bert Huls,
Foreman"

(Emphasis supplied.)

Thereafter at the penalty stage of the trial the jury assessed applicant's punishment at life imprisonment.

The court in its judgment entered the contested affirmative finding as to the use of a deadly weapon.

Article 42.12, § 3f(a)(2), V.A.C.C.P., provides in pertinent part:

" ... Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense ... the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon that the defendant used

or exhibited was a firearm, the court shall enter that finding in its judgment."

Article 42.12, § 15(b), V.A.C.C.P., in effect at the time, provided in pertinent part:

" ... [I]f the judgment contains an affirmative finding under Section 3f(a)(2) of this Article [the prisoner] is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, which is less...." [1]

■ Thus, it is clear that an improper affirmative finding may prevent an inmate from becoming eligible for release on parole as soon as he would have, had no finding been made. The affirmative finding should be made by the appropriate trier of the facts, be it judge or jury. It is improper for the trial judge to make the affirmative finding when the jury is the appropriate trier of fact. *Barecky v. State*, 639 S.W.2d 943 (Tex.Cr.App.1982). Since the jury determined both guilt and punishment, it was the proper fact finder to determine whether a deadly weapon was used in the commission of the offense. See *Thomas v. State*, 638 S.W.2d 905 (Tex.Cr.App.1982). See and cf. *Fann v. State*, 702 S.W.2d 602 (Tex.Cr.App.1986).

In the instant case the trial court was unauthorized to enter the affirmative finding order in the judgment under the circumstances presented. The nunc pro tunc order later entered by the court reflecting the jury made the affirmative finding is generally immaterial. Since the court's order was improper, was there in this case an affirmative finding by the jury as to the use of a deadly weapon?

A jury's verdict on the indictment may constitute an affirmative finding. If the indictment specifically alleges the offense was committed for example "with a knife, a deadly weapon...." then an affirmative finding is de facto made in the verdict when the defendant is found guilty "as

charged in the indictment." See *Ruben v. State*, 645 S.W.2d 794 (Tex.Cr.App.1983).

In *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Cr.App.1985), it was written:

"We pause to note that in some instances an affirmative finding will arise as a matter of law. If the trier of fact finds that a pistol has been used in the commission of the offense under the circumstances described above, then it has found that a deadly weapon has been used since a pistol is a deadly weapon per se. *Williams v. State*, 567 S.W.2d 507 (Tex.Cr.App.1978); *Giles v. State*, 617 S.W.2d 690 (Tex.Cr.App.1981), and cases cited therein at 691. Thus analysis would extend to other instruments categorized as per se deadly weapons, such as a firearm. *Stewart v. State*, 532 S.W.2d 349 (Tex.Cr.App.1976); a 30–30 calibre rifle, *Bravo v. State*, 627 S.W.2d 152 (Tex.Cr.App.1982); *or a handgun, Dade v. State*, 622 S.W.2d 580 (Tex.Cr. App.1981)." (Emphasis supplied.)

Further, in *Polk* at p. 396, it was stated:

"Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:

"1) the deadly weapon has been *specifically* plead *as such* (using the nomenclature 'deadly weapon') in the indictment.. (Applies where the verdict reads, 'guilty as charged in the indictment.' See *Barecky*, supra.)

"2) where not specifically pled in '1)' above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or

"3) a special issue is submitted and answered affirmatively.

No longer will a verdict 'amount to' or 'necessarily imply' an affirmative finding of use or exhibition of a deadly weapon or firearm. We will no longer look to the facts of the case to permit an 'implied'

---

1. Now see the provisions of Article 42.18, § 8(b), V.A.C.C.P. (Acts 1985, 69th Leg., p. 2943, ch. 427, eff. Sept. 1, 1985).

affirmative finding as the Court of Appeals, relying on prior case law, did in this case. We overrule all prior holdings to the contrary." (Emphasis in the opinion itself.)

 If the verdict in the instant case can be construed as an affirmative finding, it must be under 2) above stated in *Polk.* The indictment did not specifically use the nomenclature "deadly weapon." It did, however, allege the offense of murder was committed by shooting "with a handgun."

V.T.C.A., Penal Code, § 1.07(a)(11), provides:

" 'Deadly weapon' means:

"(A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

V.T.C.A., Penal Code, § 46.01 (Chapter Definitions), provides in part:

"In this Chapter

"(1) * * *

"(3) 'Firearm' means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. Firearm does not include antique or curio firearms that were manufactured prior to 1899 and that may have, as an integral part, a folding knife blade or other characteristics of weapons made illegal by this chapter.

\* \* \* \* \* \*

"(5) 'Handgun' means any firearm that is designed, made, or adapted to be fired with one hand."

It is clear that the terms "firearm" and "handgun" are limited to the offenses found in Chapter 46 of the Penal Code, but such definitions may be used to assist in understanding "deadly weapon" in the context of other offenses. *Vaughn v. State,* 600 S.W.2d 314 (Tex.Cr.App.1980); *Walker v. State,* 543 S.W.2d 634 (Tex.Cr.App.1976); *Colon v. State,* 680 S.W.2d 28 (Tex.App.-Austin 1984). Since the terms "firearm" and "handgun" are not defined elsewhere in the Penal Code or Code of Criminal Procedure, they are to be given their common meaning in accordance with common usage. See Government Code, § 311.-011(a).[2]

"Firearm" is designed as "a weapon from which a shot is discharged by gun powder." Webster's Third New International Dictionary, Unabridged (1961).

"Firearm" means "a gun from which a projectile is fired." The American College Dictionary (1960).

Black's Law Dictionary, Fifth Edition (1979), defines "firearm" as "an instrument used in the propulsion of shot, shell or bullets by the action of gunpowder exploded within it. A weapon which acts by force of gunpowder. This word comprises all sorts of guns, fowling-pieces, blunderbusses, pistols, etc...."

In addition to the definition of "handgun" in § 46.01(5), supra, upon which we may rely for guidance, we find that "handgun" has been defined as "any firearm that can be held and fired with one hand; a revolver or a pistol." The Random House Dictionary of the English Language; Unabridged Edition (1967). The Reader's Digest Great Encyclopedic Dictionary (1966) simply says "handgun" means "a pistol."

Webster's Third New International Dictionary, Unabridged (1961), states a "handgun" is "a firearm held and fired with one hand."

It has been said that a firearm is by definition a "deadly weapon" for purposes of application of the Penal Code. V.T.C.A., Penal Code, § 1.07(a)(11); *Stewart v. State,* 532 S.W.2d 349 (Tex.Cr.App.1986).

**2.** Said § 311.011(a) provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage."

It is also well settled that a pistol is a deadly weapon per se. *Giles v. State,* 617 S.W.2d 690 (Tex.Cr.App.1971); *Williams v. State,* 567 S.W.2d 507 (Tex.Cr.App.1978); *Jackson v. State,* 548 S.W.2d 685 (Tex.Cr. App.1977); *Garcia v. State,* 541 S.W.2d 428 (Tex.Cr.App.1976); *Fentis v. State,* 528 S.W.2d 590 (Tex.Cr.App.1975); *Thompson v. State,* 521 S.W.2d 621 (Tex.Cr.App.1974); *Valle v. State,* 438 S.W.2d 583 (Tex.Cr.App. 1969); *Perez v. State,* 625 S.W.2d 785 (Tex. Cr.App.1981). And within a prosecution under Chapter 46 of the Penal Code this Court made clear that a pistol is necessarily a handgun and the term "pistol" includes the sense and the meaning of the term "handgun." *Sims v. State,* 546 S.W.2d 296, 298 (Tex.Cr.App.1977).

In *Dade v. State,* 622 S.W.2d 580 (Tex. Cr.App.1981), it was stated:

"Finally, the indictment unequivocally states that the implement for escape was intended to be a handgun which has been construed to constitute a deadly weapon per se."

In the instant case the indictment expressly charged the applicant with murder by shooting the victim "with a handgun." The jury found the applicant guilty "as charged in the indictment." While it may be better practice to submit a special issue to the jury, we conclude that the jury's verdict at the guilt stage of the allegations in the murder indictment, and the fact that a handgun is a deadly weapon per se is a sufficient affirmative finding that a deadly weapon was used in the commission of the offense.

The relief prayed for is denied.

CLINTON, Judge, joining the judgment of the Court.

In its first excerpt from *Polk v. State,* 693 S.W.2d 391, 394 (Tex.Cr.App.1985), the opinion of the Court underscores "of a handgun" in reference to *Dade v. State,* 622 S.W.2d 580 (Tex.Cr.App.1981), and la-

ter on the opinion quotes from *Dade,* itself. What *Polk* and the opinion overlook is that, consonant with the statutory prescription that an implement introduced to facilitate an escape may be a deadly weapon, the indictment in *Dade* twice alleged the "handgun" there possessed to be a "deadly weapon." Thus, *Dade* more properly belongs in the first category classified by *Polk,* supra, at 396.

Every case cited by the Court in *Dade* for the proposition that "a *handgun* ... has been construed to constitute a deadly weapon per se" involved a *pistol.*[1] In essence, then, the Court has already equated "handgun" with "pistol." However, one would reasonably suppose that neither a "handgun" nor a "pistol" is a deadly weapon unless it is a "firearm" contemplated by V.T.C.A. Penal Code, § 1.07(a)(11). *Walker v. State,* 543 S.W.2d 634, 637 (Tex.Cr. App.1976). Many a socalled "pistol," "handgun" and "gun" is not really a firearm, as any parent of a minor "cowboy" or "cop" will attest. Yet, even judges continue to use those terms though the thing in question obviously is not a firearm. See, e.g., *Mosley v. State,* 545 S.W.2d 144 (Tex. Cr.App.1976).

Since the Legislature made any firearm a deadly weapon per se and everyone fairly well understands what is a firearm, the point is that when the offense is not denounced in Chapter 46, a charging instrument should allege that the deadly weapon is a firearm, eschewing such loose terms as "pistol," "handgun" and "gun," none of which is defined outside of V.T.C.A. Penal Code, § 46.01. And I would hold that unless it is alleged as an element of the offense or, if not an element, it is alleged to be one somewhere on the indictment, a trier of fact is not authorized to find a thing is a deadly weapon for purposes of Article 42.12, § 3g(a)(2) and Article 42.18, § 8(b), V.A.C.C.P. *Polk,* supra, at 397 (Clinton, J., concurring).[2]

---

1. All emphasis is mine throughout unless otherwise indicated.

2. The instant case is illustrative, for failure of the indictment to allege somewhere that the "handgun" is a deadly weapon, towit, a firearm, created much of the ensuing turmoil—needless-

The majority finds the order below "improper" but asks whether there is "an affirmative finding by the jury as to the use of a deadly weapon," and then turns to devote no telling how much research and writing to produce its answer, *viz:*

> "[W]e conclude that the jury's verdict at the guilt stage of the allegations in the murder indictment, and the fact that a handgun is a deadly weapon per se is a sufficient affirmative finding that a deadly weapon was used in the commission of the offense."

The conclusion smacks a good deal like that which *Polk* found to be spoiled and thus sought to throw out. If a "handgun" is not a deadly weapon per se unless it is a firearm, there is still a nagging impression that because the jury found appellant guilty "as charged in the indictment" the majority has inferred appellant used a firearm from the facts that he did cause death by shooting deceased with something called a "handgun." Compare *Polk,* at 398.

While I deplore the continued refusal of the majority to deal with statutory provisions, which manifestly are perplexing parties and courts, by what I conceive is a simple expedient—if not a requirement of due process and due course of law—of having a charging instrument state a firearm is a deadly weapon and proving the "gun," "handgun" or "pistol" used by accused is a firearm, to dissent is a gesture in futility.

Accordingly, I join the judgment of the Court.

TEAGUE, Judge, dissenting.

Although Judge Clinton may be absolutely correct when he states in his "Opinion

ly. If not a matter of due process and due course of law, then as a practical matter the allegation should serve to alert judge, parties and jury to heed the handgun. Such an allegation tenders the issue and evidence surely raises it, thereby allowing the properly charged jury to make an "affirmative finding" that applicant used a deadly weapon, that is, a firearm, as required by Article 42.12, supra. *Polk,* supra. The jury having made its findings, the trial judge enters them in the judgment of the trial court. The system works.

Joining the Judgment of the Court," that "to dissent is a gesture in futility," I nevertheless must dissent to what the aggressive and assertive majority opinion does in this case, namely, it destroys many valuable constitutional rights of a defendant, in particular, the right to notice and the right to have a jury decide issues of fact.

Although the applicant was not given any notice in the charging instrument that he used a deadly weapon when he assaulted the complaining witness, and was never put on notice that the jury would make a finding that a deadly weapon was used in the commission of the offense, the aggressive and assertive majority opinion blithely holds that notwithstanding these omissions the jury actually made an affirmative finding that a deadly weapon was used or exhibited in the commission of the offense, albeit nobody, including the jurors, realized that had taken place.

The trial judge's entering the affirmative finding in its judgment was constitutionally impermissible. I dissent to the majority opinion's contrary holding. In addition to what I have previously stated, I continue to subscribe to what I stated in the concurring and dissenting opinion that I filed in *Polk v. State,* 693 S.W.2d 391, 398 (Tex.Cr. App.1985), also see a like opinion that I filed in *Gomez v. State,* 685 S.W.2d 333, 336 (Tex.Cr.App.1985), and will continue to do so as long as I have a breath of air left in my body because when an appellate court tramples on rights guaranteed in our respective constitutions, as occurs here, someone on that court is duty bound to protest; otherwise, we represent nothing less than what the members of the judiciary in the Weimar Republic became when

With the system working, the trial court would not have acted without authority in entering the finding it did and immaterially in entering a purported nunc pro tunc order; applicant would have no cause for concern over his eligibility for parole and therefore would not have filed this application for habeas corpus, thereby generating all who have to spend time, effort and expense on this proceeding.

they surrendered their judicial offices to the Nazi High Command.