TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00519-CR







James Edward Brown, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 42,897, HONORABLE JOE CARROLL, JUDGE PRESIDING







 James Edward Brown appeals from his conviction for burglary of a habitation. See
Tex. Penal Code Ann. § 30.02 (West 1994). (1) Appellant pleaded true to enhancement allegations
and the jury assessed punishment at fifty-five years confinement in the Texas Department of
Criminal Justice--Institutional Division. See Act of May 18, 1983, 68th Leg., R.S., ch. 339, §
1, 1983 Tex. Gen. Laws 1750 (Tex. Penal Code Ann. § 12.42, since amended). We will affirm
the trial-court judgment. 



THE CONTROVERSY


 On April 7, 1993, appellant broke into the private residence of Ella Combs,
manager of the Motel Westerner in Temple, Texas. Combs's residence was connected to the
motel office by a glass door and window. On hearing the sound of her window being shattered,
Combs locked herself in her daughter's bedroom and telephoned the Temple police department. 
The police arrived shortly thereafter. They found appellant in an intoxicated state with a five
dollar bill and a roll of stamps lying on the floor at his feet. Some articles in the room had also
been rearranged.

DISCUSSION AND HOLDINGS


 During closing arguments in the punishment phase, the prosecutor wrote on a chart
the years of appellant's prior convictions and the number of times he had been incarcerated. In
addition, the prosecutor attempted to paraphrase appellant's testimony by writing on the chart: 
"I ONLY GET INTO TROUBLE WHEN I DRINK. I ONLY STAY SOBER IN PRISON." 
Defense counsel objected to the prosecutor's summation as a misstatement of appellant's
testimony. The trial court sustained the objection and promptly instructed the jury to recall the
testimony as they remembered it and not as the prosecutor or defense counsel paraphrased the
testimony. The jury later requested and improperly received the prosecutor's chart during their
deliberations. The bailiff testified that she delivered the chart to the jury, but that it was only in
the jury room for approximately two minutes before the judge realized what had happened and
ordered the chart removed. In his first and second points of error, appellant complains the trial
court erred in overruling his subsequent motion for mistrial and motion for new trial. 

 Appellant argues that "other evidence" was introduced when the jury was permitted
to take the chart into the jury room for deliberations, and rule 30(b)(7) of the Texas Rules of
Appellate Procedure thus required a new trial. Rule 30(b)(7) provides that the defendant shall
have a new trial "[w]here after retiring to deliberate the jury has received other evidence." Tex.
R. App. P. 30(b)(7). Under rule 30(b)(7), appellant must show that (1) "`other evidence' was
actually received by the jury, and (2) that such evidence was detrimental to the appellant." Garza
v. State, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981). The character of the evidence, in light
of the issues before the jury, is the controlling factor in our determination, rather than the effect
of such evidence upon the jurors. Id. Whether the jury has received "other evidence" is a
question for the trial court and will not be overturned absent an abuse of discretion. Freeman v.
State, 838 S.W.2d 772, 777 (Tex. App.--Corpus Christi 1992, pet. ref'd). 

 The State argues the chart did not constitute "other evidence" because the
information on the chart had already been admitted into evidence, the chart itself would have been
admitted into evidence had it been offered, the chart had been in front of the jury during argument
for a considerable amount of time, and the jury did not have time to examine the chart during the
two minutes it was in the jury room. 

 Appellant admitted to each and every conviction listed on the prosecutor's chart. 
During cross-examination, the following exchange occurred:

 Q: [Prosecutor] Let me take you back to 1976.

 . . . .

 Q: [Prosecutor] Are you one and the same person who was
previously convicted under the name Jesse E. Baird of
burglary and sentenced to one to three years confinement in
the Illinois Department of Corrections of Joliet?


 A: [Appellant] Not Jesse, no.


 Q: Excuse me.


 A: Not Jesse, no.


 Q: James E. Baird.


 A: Yes, James E. Baird. Yes, I was.


 Q: Moving forward a couple of years, July 18th, 1978, are you
one and the same person who under the name of James E.
Baird was sentenced to one to three years for burglary and did
some time at the Menard Correctional Center?


 A: Yeah. That was the same offense as happened in 1976. It
was the same offense.


 Q: Was it a parole violation?


 A: It was a parole violation, yes, due to my drinking.


 Q: Moving forward to March 9th of 1983, are you one and the
same person who under the name of James E. Brown was
convicted of the offense of residential burglary and sentenced
to a term of four years confinement?


 A: Yes, sir. I broke into my girl friend's house.


 Q: You have seen the pen packs that were previously admitted
out of Illinois, and we are talking about those offenses at this
time, are we not?


 A: Yes, sir. I was. That was a misdemeanor theft that was
enhanced due to my prior conviction. I was intoxicated.


 Q: In May of '87 was there another--


 A: No. There was another parole violation.


 Q: Because?


 A: Of my drinking, sir.


 Q: In 1987, August 20th, 1987, under the name of James Edward
Brown in Lawrence, Kansas, were you convicted of burglary
and sentenced to a term of one to seven years confinement?


 A: Yes, sir. I broke into a bar. I was drunk.


 Q: January 10th, 1989, Gregg County, Texas, are you one and
the same James Edward Brown who was convicted of the
offense of theft over 20 and sentenced to 30 days in jail?


 A: Yes, I am. It was cigarettes from Kroger's store.


 Q: Then in April of '89 and July of 9 [sic] the prior felonies pled
in the indictment that you have plead [sic] true to you were
sent to prison again and again, correct?


 A: Yes, sir.


 . . . .


 Q: 1991, that is McLennan County, five [years] for robbery?


 A: Yes, sir.


 Q: Seventh, or excuse me. Seventh offense, tenth trip [to
prison]?


 A: Yes, sir.


 Q: Are you telling these ladies and gentlemen of the jury you
have never had a chance to straighten out your drinking?


 A: I have had a chance to get sober. I have never been taught
how to live sober outside of prison. Every time I have come
out of prison or in an incarcerated period the first option I
was always went and got something to drink; and within a
short period of time it has always put me back in prison.



(Emphasis added.)


 Appellant cites Chew v. State, 804 S.W.2d 633, 639 (Tex. App.--San Antonio 1991,
pet. ref'd), and Willmann v. State, 720 S.W.2d 543, 545 (Tex. App.--San Antonio 1986, pet.
ref'd), for the proposition that evidence not properly admitted at trial that is taken into the jury
room constitutes "other evidence," and that if the other evidence is detrimental, the defendant need
not show he was harmed by the evidence because he is entitled to a new trial as a matter of law. 


 In Chew, the defendant was charged with kidnapping aggravated by an intent to
commit sexual assault, a charge he defended on the ground that the complainant had consented
to the event and to sexual intercourse. Due to an oversight, the jurors were permitted to take into
the jury room an item not admitted in evidence--the complainant's affidavit that she did not wish,
because of media harassment, to prosecute the case. The appellate court concluded the affidavit
constituted "other evidence" because the central issue was consent; the defendant contended
throughout the trial that the complainant wished to conceal her nymphomania, which was the true
reason she did not wish to prosecute; and the affidavit would have justified the admission, for
impeachment purposes, of previously excluded evidence of the alleged nymphomania. Chew, 804
S.W.2d at 639. 

 Unlike the jury in Chew, the jury in the present cause had already seen the State's
demonstrative exhibit and heard appellant's admission concerning the very information written
on the chart. Thus, no new information regarding appellant's criminal history was permitted to
enter the jury room. 

 In Willmann, defense counsel loaded a gun in front of the jury and argued that the
trace of gunshot residue found on the palms of the deceased's hands was not the result of the
deceased having his hands out in self-defense, as testified by the medical examiner, but was the
result of the deceased loading a clip in order to shoot the defendant. Willmann, 720 S.W.2d at
544-47. On appeal, the defendant complained that a juror who claimed to know about firearms,
demonstrated to the other jurors in the jury room how to load and unload a pistol clip, thus
introducing "other evidence." The Willmann court disagreed, stating that by loading the gun, the
jurors were simply doing what defense counsel had already done in their presence. Id. at 547. 


 Both cases state the general rule that the information improperly considered by the
jury must be detrimental in order to constitute "other evidence." Furthermore, in each case cited
by appellant, jurors involved in the alleged misconduct either testified in person or by affidavit
concerning what was said during jury deliberations. No jurors testified in the present cause. (2) We
conclude that the chart listing appellant's criminal history and summarizing appellant's testimony
is not "other evidence," and that no new evidence was given to the jury. See Garza, 630 S.W.2d
at 274; Freeman, 838 S.W.2d at 777-78. The chart had been before the jury during closing
argument and the jury had been admonished to recall appellant's testimony and not counsel's
summary of appellant's testimony. We overrule appellant's first and second points of error.

 In his fourth point of error, appellant contends the trial court erred when it denied
appellant's motion for mistrial based on the prosecutor's improper argument at the punishment
phase. (3) Specifically, appellant complains about the following:



[Prosecutor:] . . . What do you do with a man who has committed 7 offenses
within the last 16 years and been to the penitentiary? What do you do with him? 



 The answer is a harsh one, but it is a simple one because [appellant] tells
you in his own words. [Appellant] told you yesterday that he only gets into trouble
when he drinks. This case is a good demonstration. So are the other ten trips he
made to the penitentiary. Each time he says he got into trouble because he drank. 
He says he can only stay sober in prison. 


[Defense Counsel:] Your Honor, I object to that. That is a misstatement of the
testimony.


[The Court:] All right. Ladies and gentlemen, let me give you a little lecture on
that. You have to remember the testimony. It is not what [the Prosecutor] says
it is. It is not what [the Defense Counsel] says it is. It is not what I say it is. The
testimony is what you remember. And the lawyers are going to argue what they
think the testimony is, but you just remember it the way you remember it, and that
is your job. And they have got a lot of other things to do in court besides
remember the testimony so I will sustain your objection and instruct the jury to
remember the testimony as they remember it. The attorneys are entitled to
comment on what they think the testimony shows. 


[Defense Counsel:] Your Honor, we respectfully move for a mistrial. 


[The Court:] All right. Overruled.


. . . . 


[Prosecutor:] At any rate, paraphrasing, at least, a reasonable deduction from the
evidence, and what he said on the stand is, "I only get into trouble when I drink." 
And he did say that I stay sober when I am in prison. I stay clean.


[Defense Counsel:] Your Honor, I, again object to the misstatement of testimony. 



[The Court:] All right. Again, I will instruct the jury just remember the testimony
that--[the Prosecutor], I don't believe, is intentionally misstating the testimony. He
is trying to paraphrase it, and under those circumstances he can do that as long as
the jury understands that is what he trying [sic] to do.



 Appellant must obtain an adverse ruling as to each portion of the prosecutor's
alleged improper argument in order to preserve error for our review. Ethington v. State, 819
S.W.2d 854, 858-60 (Tex. Crim. App. 1991); Dickerson v. State, 866 S.W.2d 696, 698-99 (Tex.
App.--Houston [1st Dist.] 1993, no pet.). Although appellant objected and asked for a mistrial in
the first instance, the prosecutor continued with the same line of argument; appellant has
preserved for review only the first portion of the prosecutor's complained of jury argument. 
Dickerson, 866 S.W.2d at 698. 

 We conclude, however, that any error was cured by the trial court's admonishment. 
"Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury
to disregard the argument, unless the remark is so inflammatory that its prejudicial effect cannot
reasonably be removed by such an admonishment." Brown v. State, 692 S.W.2d 497, 502 (Tex.
Crim. App. 1985) (quoting Blansett v. State, 556 S.W.2d 322, 328 (Tex. Crim. App. 1977)). 
We overrule appellant's fourth point of error.

 In his third point of error, appellant complains the trial court erred in denying
appellant's motion to testify free from impeachment with prior convictions. The trial court
overruled appellant's motion before the trial began and again after it was re-urged during trial. 
Appellant argued at trial and on appeal that rule 609 of the Texas Rules of Criminal Evidence and
Theus v. State, 845 S.W.2d 874 (Tex. Crim. App. 1992), justified his motion. See Tex. R. Crim.
P. 609(a) (evidence that witness has been previously convicted of felony may be admitted to attack
the credibility of the witness if "the court determines that the probative value of admitting the
evidence outweighs its prejudicial effect to a party"). In Theus, the Court of Criminal Appeals
explained that in balancing the competing considerations of rule 609 the following factors should
be considered: (1) the impeachment value of the prior crime; (2) the temporal proximity of the
past crime relative to the charged offense and the witness's subsequent history; (3) the similarity
between the past crime and the offense being prosecuted; (4) the importance of the defendant's
testimony; and (5) the importance of the credibility issue. Theus, 845 S.W.2d at 880. Theus is
distinguishable from the present cause in that Theus was convicted for delivery and possession of
cocaine and was attempting to keep out evidence of a previous arson conviction. (4) The court,
holding that even though four of the five factors favored admissibility, stated as follows:



[T]he unique facts of this case compel the conclusion that the lack of impeachment
value overrides the other four factors. . . . because: (1) the arson conviction had
so little probative value on the question of appellant's credibility and had much
prejudicial effect against him, and (2) the trial judge failed to dispel the prejudicial
effect when presented with the opportunity.



Id. at 881-82.

 The trial court, after weighing the Theus factors, determined that it could not grant
a blanket motion forbidding the State from impeaching appellant under any circumstance; instead
the trial court decided it would hear the testimony and then rule on the evidence of prior
convictions as the testimony emerged. We conclude the trial court did not abuse its discretion and
overrule appellant's third point of error.

 In his fifth point of error, appellant complains that the prosecutor's improper
statement during voir dire, concerning circumstantial evidence of appellant's intent to steal,
resulted in appellant receiving an unfair trial. Appellant has failed to preserve error by not calling
the matter to the trial court's attention. See Tex. R. App. P. 52(a); Felder v. State, 848 S.W.2d
85, 96 (Tex. Crim. App. 1992), cert. denied, 114 S.Ct. 95 (1993). We overrule appellant's fifth
point of error. 

 In his sixth point of error, appellant complains the evidence is legally insufficient
to support his conviction. Appellant admits he entered a habitation without the effective consent
of the owner; however, he complains the evidence supported the reasonable hypothesis that
appellant entered the motel to sleep and lacked the requisite intent to commit theft. 

 The evidence shows that Combs was awakened at two in the morning on April 7,
1993, by a noise outside her window. Moments later she heard the sound of glass breaking. She
grabbed a cordless telephone and ran to her daughter's room to call the police. The police arrived
three to five minutes later. Appellant was found inside Combs's cluttered laundry room in an
intoxicated state. On the floor near where appellant was apprehended were a five-dollar bill and
a roll of stamps. Initially Combs could not tell if anything was missing; however, she later told
the police the stamps were hers and had been taken from her desk in the motel office. A few
items including an old toilet seat and a pillow had been moved around the room. Combs testified
that the laundry room where appellant was apprehended and a bathroom are the side of her
bedroom where the window was broken. On the other side of her bedroom is a living room,
kitchen, and hallway to her daughter's bedroom. From the living room, one can go through a
door, up some stairs, and into the motel office. Someone standing in the office can see down into
the living room of the private residence. The window to the laundry room appeared from the
outside to be the window of a motel room. 

 Sam Adams had driven appellant to several bars that night. Adams had last
dropped appellant off at the Western Corral, a bar located a couple of blocks from the motel, and
had arranged to pick up appellant at two in the morning when the bar closed. Terri Wilson,
appellant's girlfriend and roommate, testified that although she and appellant had argued earlier
that evening, she expected him to come home that night. 

 In assessing the legal sufficiency of the evidence, "the relevant question is whether
after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.
Virginia, 443 U.S. 307, 318 (1979); Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App.
1991) (rejecting the reasonable hypothesis analytical construct). It is well established that the
question of the intent with which a person enters a building is a fact question which the trier of
fact can resolve from the surrounding circumstances. Ortega v. State, 626 S.W.2d 746, 749 (Tex.
Crim. App. 1991); Bailey v. State, 722 S.W.2d 202, 204 (Tex. App.--San Antonio 1986, no pet.). 
The evidence that police found appellant with a five-dollar bill and a roll of stamps belonging to
Combs at his feet permitted the jury reasonably to infer that appellant intended to commit theft. 


 Appellant also contends that the evidence is factually insufficient, citing Stone v.
State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). In a factual-sufficiency review, we must presume the evidence supporting the verdict to be legally sufficient,
but may not view the evidence in a light favorable to the prosecution. Id. We may "consider the
testimony of defense witnesses and the existence of alternative hypotheses." Id. The verdict will
not be set aside unless "it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust." Id. (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) and In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951)). Although appellant testified that he only broke
into the motel because he was looking for a place to sleep, evidence that Adams was to pick him
up from the bar at closing time and drive him home where Wilson expected him to sleep, along
with evidence of the money and stamps at his feet and his previous convictions for burglary,
reasonably support the jury's verdict. We cannot say that appellant's conviction was contrary to
the overwhelming weight of the evidence. We therefore overrule appellant's sixth point of error.

 We affirm the trial-court judgment.



 

 John Powers, Justice


Before Justices Powers, Aboussie and B. A. Smith


Affirmed


Filed: July 12, 1995

 

Do Not Publish

1.   The offense took place before September 1, 1994, and is governed by the law in effect at
the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex.
Gen. Laws 3586, 3705. Because the Code amendments effective September 1, 1994, have no
substantive effect on this offense, the current Code is cited for convenience.
2.   At the hearing on the motion for new trial, appellant attached the affidavit of Mona
Deorsam, defense counsel's legal secretary, stating that she had spoken with Juror Genevieve
Jarma Pitcock. See Dugard v. State, 688 S.W.2d 524, 528 (Tex. Crim. App. 1985),
overruled on other grounds, Williams v. State, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989)
(affidavit of juror or person with knowledge of facts must be attached to motion for new trial
alleging jury misconduct, or affidavit must explain why such affidavit could not be obtained). 
The affidavit stated:


[T]he chart was used to determine the defendant's criminal history and the length
of time he was incarcerated on each charge. She also stated that, though
previously undecided, the chart helped her decide what sentence to impose and
that the chart helped her with information upon which to base the sentence.

I asked Ms. Pitcock to sign an affidavit relating the above facts. However, she
informed me that she felt that she had done her civic duty and stated she did not
want to sign an affidavit.

Appellant's affidavit is insufficient to show that the jury received "other evidence" because the
defendant's criminal history and length of incarceration were already admitted into evidence.
3.   The prosecutor's jury argument complained of is the same argument defense counsel
objected to with regard to the writing on the chart discussed above. 
4. In Theus, the defendant


 after a domestic dispute with his girlfriend, had taken a beer can
filled with gasoline, poured the gasoline through her postal slot,
and then set fire to the postal slot. . . . [Theus] was not ordered
to pay any restitution in that case. In ruling that the arson
conviction was admissible, the trial judge said "I don't think
there will be any need to go into all the details of that case other
than there has been a conviction."


Theus, 845 S.W.2d at 882. The Court of Criminal Appeals agreed with Theus "that the
potential for prejudice was great because `arson' potentially conjures up images of burning
buildings and insurance fraud." Id. at n.9.